IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| VICTOR ROSALES<br>TDCJ No. 02032104,<br><br>  Petitioner,<br><br>v.<br><br>BOBBY LUMPKIN,[1] Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br><br>  Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | A-19-CV-1053-RP |

## ORDER

Before the Court are Petitioner Victor Rosales's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent's Response (ECF No. 9), and Petitioner's Reply (ECF No. 12). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I. Background

In May 2014, Petitioner was charged by indictment with two counts of aggravated sexual assault of a child, one count of indecency with a child by contact, and two counts of indecency with a child by exposure. (ECF No. 16-18 at 19-20.) The State sought to introduce evidence of extraneous offenses during its case in chief pursuant to Article 38.37 of the Texas Code of Criminal

---

[1] Bobby Lumpkin has replaced Lorie Davis as the Director of the Texas Department of Criminal Justice, Correctional Institutions Division and is hereby substituted as the defendant. FED. R. CIV. P. 25(d).

Procedure.² (*Id.* at 58-59.) In October 2015, a jury convicted Petitioner of one count of aggravated sexual assault of a child and sentenced him to forty years imprisonment. *State v. Rosales*, No. D-1-DC-14-300723 (299th Dist. Ct., Travis Cnty., Tex. Oct. 23, 2015.) (ECF No. 16-19 at 19-20.) Below is a summary of the factual background for Petitioner's conviction.

> The jury heard evidence that on October 25, 2013, Rosales sexually assaulted Y.R., his 13-year-old niece. Y.R. testified that on the day of the assault, Rosales picked her up from school to go shopping, made stops at a convenience store and a bank, and then drove her to a motel. According to Y.R., Rosales told her that he was planning on meeting someone in one of the motel rooms and asked her if she wanted to go inside with him. Y.R. agreed. Once they were inside the room, Y.R. recounted, she sat down on the bed and Rosales "started looking at [her] pretty weird," began asking her if she and her boyfriend had ever "done anything" sexual together, and then "grabbed" Y.R., "pinned [her] down" on the bed, took off her clothes, kissed her, and eventually penetrated her sexual organ with his.
>
> Other evidence considered by the jury included the testimony of Y.R.'s mother, the first adult to whom Y.R. had reported the assault; Dahlia Alshahri, an employee at the motel where Y.R. claimed the assault had occurred, who testified that motel records showed that Rosales had checked into the motel on the date in question; Dr. Beth Nauert, a pediatrician who had examined Y.R. following the assault and observed a tear in Y.R.'s hymen that was "consistent with [Y.R.'s] history of a single episode of previous vaginal penetration"; Denise Baxindine, a social worker who had counseled Y.R. following the assault; and Detective Carey Chaudoir of the Austin Police Department, who had investigated the assault. Based on this and other evidence, which we discuss in more detail below, the jury found Rosales guilty of aggravated sexual assault of a child as charged and assessed punishment at 40 years' imprisonment as noted above.

*Rosales v. State*, No. 03-15-00735-CR, 2017 WL 5247497 (Tex. App.--Austin, Nov. 10, 2017, pet. ref'd).

On November 10, 2017, Petitioner's conviction was affirmed on direct appeal. *Id*. Petitioner thereafter filed a counseled Petition for Discretionary Review (PDR) (ECF No. 16-24),

---

² Under article 38.37, "evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37 § 2(b) (West 2019).

which the Texas Court of Criminal Appeals (TCCA) refused on April 18, 2018, *Rosales v. State*, No. PD-1297-17 (Tex. Crim. App. Apr. 8, 2018). Petitioner did not file a writ of certiorari in the United States Supreme Court. (ECF No. 1 at 3.)

On June 7, 2019, Petitioner filed a pro se state habeas corpus application. (ECF No. 16-30 at 14-40.) Petitioner listed the following three grounds of relief:

1. Trial counsel provided ineffective assistance of counsel when counsel failed to object to a jury charge based on the fact that the jury could not consider the evidence of extraneous offenses unless they believed beyond a reasonable doubt that Petitioner had committed those offenses;

2. Trial counsel provided ineffective assistance when counsel failed to object to the prosecutor's improper bolstering of the complainant's credibility during closing arguments; and

3. Trial counsel provided ineffective assistance when counsel failed to procure an expert witness to rebut the false testimony of the State's expert witness that it was possible for a torn hymen not to bleed.

(*Id.* at 19-24.) On July 31, 2019, the TCCA denied Petitioner's application without written order. (ECF No. 7-26.) *Ex parte Rosales*, No. WR-90,107-01.

On September 16, 2019, Petitioner filed this pro se federal habeas petition, raising the same claims from his state habeas application. (ECF No. 1.) On December 19, 2019, Respondent filed an answer to the petition to which Petitioner replied on January 31, 2020. (ECF Nos. 9, 12.)

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by

the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Where, as here, there is no reasoned state court decision, the Court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (quotation omitted); *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018). "If this standard is difficult to meet—and it is—that is because it was meant to be." *Mejia*, 906 F.3d at 314 (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

## III. Analysis

### A. Ineffective Assistance of Counsel (IAC)

Petitioner's claims are based on allegations that his trial attorney provided ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims concerning allegedly ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

5

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

*1. Failure to Object to Jury Charge*

In claim 1, Petitioner argues his trial counsel, Joe Gonzales, provided ineffective assistance when he failed to object to the jury charge during the punishment phase. Specifically, Petitioner argues that the punishment jury charge did not include an instruction that the jury could not consider evidence of extraneous offenses unless they believed beyond a reasonable doubt that Petitioner had committed the offenses. Petitioner argues that, had counsel objected to the punishment jury charge, the jury would likely have assessed a shorter sentence. Further, Petitioner argues that Mr. Gonzales's failure to object and preserve error resulted in the Court of Appeals analyzing his error under a much more stringent standard, i.e. the "egregious error" standard versus the "some harm" standard. (ECF No. 1 at 12-13.)

In Petitioner's direct appeal, he argued the trial court erred by failing to instruct the jury in the punishment charge that it could only consider evidence of extraneous offenses and various bad acts if it believed the testimony about the offenses and bad acts beyond a reasonable doubt. The State conceded the error but argued that Petitioner was not harmed. Because Petitioner's trial

counsel had failed to object to the jury charge, the appellate court analyzed the error for egregious harm. In overruling Petitioner's claim, the appellate court concluded that while one factor, the entirety of the charge, weighed in favor of finding egregious harm, the remaining factors did not: there was overwhelming evidence that Petitioner had abused his 13-year-old niece and no indication in the record that Petitioner would have received a lighter sentence if the jury had received the proper punishment instructions; the parties' opening and closing arguments indicated that the extraneous offenses were not sharply disputed; and Petitioner's sentence of forty years imprisonment was much lighter than the statutory maximum punishment of life imprisonment. *Rosales*, 2017 WL 5247497, at *6-8.

In his state habeas application, Petitioner argued that his counsel was ineffective for failing to object to the jury charge. The TCCA denied this claim but did not provide a reasoned decision. Petitioner now reasserts this claim in his federal habeas petition. As noted above, when "a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits" even without a written explanation of the court's reasoning. *Richter*, 562 U.S. at 99. Fifth Circuit precedent holds that, in such situations, this Court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (citations omitted).

For a federal court to grant relief based on a petitioner's challenge to his state trial counsel's actions during the punishment phase, there must be a reasonable probability that the petitioner's non-capital sentence would have been "significantly less harsh" but for counsel's alleged errors. *Spriggs v. Collins,* 993 F.2d 85, 88 (5th Cir.1993). As the court noted in Petitioner's direct appeal,

Petitioner's sentence was in the middle of the range for his convicted offense and there was "overwhelming evidence" supporting his conviction for the charged offense. Petitioner argues that, because the State asked for a 40-year sentence during the punishment phase, it is reasonable to believe Petitioner would have received a much lighter sentence if the jury had received proper sentencing instructions. However, the record shows that the State asked for a sentence of "no less than 40 years" (ECF No. 16-12 at 138), which does not support Petitioner's inference that, had his counsel objected to the jury charge, he would have received a significantly less harsh sentence. Indeed, the jury sentenced him to the minimum term of imprisonment requested by the State, which was also far less than the term of life imprisonment authorized by the statute. Accordingly, the state court's application of *Strickland* to this claim was not unreasonable, and it is denied.

*2. Failure to Object to the Prosecutor's Closing Argument*

Petitioner next claims that Mr. Gonzales provided ineffective assistance of counsel when he failed to object to the prosecutor's statements during closing argument that bolstered the complainant's credibility. Specifically, Petitioner points to the prosecutor's following statement:

> And so -- but most important, of course, is [the complainant]'s credibility because that is this case, and I submit to you that *she is 100 percent credible and you can believe her story beyond a reasonable doubt*. It proves every element of the offense. Why? Does [the complainant] have a reason to lie?

(ECF No. 16-11 at 106, emphasis added.) The prosecutor then proceeded to review and summarize the complainant's testimony. Petitioner argues that prosecutor's statement that the complainant was "100 percent credible and you can believe her story beyond a reasonable doubt" violated his right to a fair trial, and that his trial counsel provided ineffective assistance when he failed to object to it.

8

In the context of an IAC claim, trial counsel cannot be deemed ineffective for failing to make futile or unmeritorious objections. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)); *Ward v. Dretke*, 420 F.3d 479, 498 (5th Cir. 2005) (counsel not ineffective for failing to lodge what would likely have been a futile objection).

Under Texas law, "closing arguments may include argument as to the truthfulness of a witness's testimony so long as the argument is based on the evidence presented and reasonable deductions from such evidence." *Stout v. State*, 426 S.W.3d 214, 220-21 (Tex. App.--Houston 2012); *see also Graves v. State,* 176 S.W.3d 422, 431 (Tex. App.--Houston 2004) (jury argument may include vouching for a witness's credibility if it is reasonable deduction from evidence). It is reasonable to believe that Petitioner's trial counsel did not object to the prosecutor's statement because he believed the statement was proper under Texas law and an objection would have been futile. *See Sexton*, 138 S. Ct. at 2558 (without a reasoned decision from that state habeas court, Court must determine "must determine what arguments or theories . . . could have supported the state court's decision".) Counsel is not required to make meritless objections; accordingly, the state habeas court's denial of this claim is not an unreasonable application of *Strickland*, and this claim is also denied.

*3. Failure to Procure an Expert Witness*

In his last claim, Petitioner argues his trial counsel was ineffective when he failed to procure an expert witness to rebut the State's expert witness who testified that it was "possible to not cause bleeding when a hymen is torn." Petitioner argues this testimony was false and, had an

9

expert witness rebutted this statement, the rebuttal would have contradicted the complainant's testimony that she had not previously had sexual intercourse, resulting in her credibility being impeached.

Petitioner points to the following passages from Dr. Beth Nauert's testimony, a pediatrician who examined the complainant after she made her outcry. Dr. Nauert stated that, during the examination, the complainant told her the Petitioner

> took her into the [hotel] room, he took off some of her clothes and some of his clothes, put on a condom and had sex with her in her vagina. She stated that as soon as she got dressed, quote, "I ran to the car and I sat in the back, then he drove us to pick up my cousin. He said if I told, something bad was going to happen," end quote. She told me that this was the only sexual -- her only experience with sexual activities, and she denied any inappropriate touching or any sex with anyone else.

(ECF No. 16-10 at 20.) Dr. Nauert further testified that during her physical examination of the complainant she observed a tear in her hymen and concluded that it was an abnormal physical examination which "was consistent with [the complainant's] history of a single episode of previous vaginal penetration, but it wasn't proof of that." Dr. Nauert also testified that an event which causes a tear in the hymen will "not necessarily . . . cause bleeding." (*Id*. at 24-25.)

Petitioner argues his trial counsel was deficient for not finding a medical expert to rebut this testimony, claiming that "qualified medical expert(s) could be found who would have testified that when a (13) year old child's hymen is torn to the degree as with [the complainant], bleeding would have occurred." (ECF No. 1-1 at 32.) In support of his claim, he has attached a printout from Quora.com that has responses to the question "Can I have sex without losing my virginity?" (ECF No. 1-8 at 2.)

*Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at minimum, interview

potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). In assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691.

To prevail on an IAC claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate the witness was available to testify, delineate the content of the witness's proposed testimony, and show the testimony would have been favorable to the defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Furthermore, a petitioner cannot "simply allege but must affirmatively prove prejudice" under *Strickland* when complaining of counsel's failure to investigate. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). A petitioner alleging that an investigation is deficient must show what the investigation would have uncovered and how the petitioner's defense would have benefited from this information. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

Petitioner has failed to meet his burden. He has not provided any names of witnesses who would have testified as a rebuttal to Dr. Nauert, and his allegations that there were medical experts available, along with the Quora.com printout, are conclusory and insufficient. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("conclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel" (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000))). Accordingly, Petitioner has failed to show that the state habeas court's application of *Strickland* was unreasonable and this claim is denied.

### IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule

11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is **FURTHER ORDERED** that no certificate of appealability shall issue in this case.

SIGNED this 24th day of August, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE